IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEVEN G. HESTER, | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | A-12-CV-190-LY |
| | § | |
| WILLIAMSON COUNTY, TEXAS, | § | |
|     Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment (Dkt. No. 14), Plaintiff's Response in Opposition (Dkt. No. 17), and Defendant's Reply (Dkt. No. 18). The District Court referred the above-motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  BACKGROUND**

Plaintiff Steven G. Hester ("Hester") was a mechanic employed by Defendant Williamson County, Texas ("County") from 2004 until his termination on September 1, 2011. Dkt. No. 14, Ex. A at 19–20 [hereinafter Hester Dep.]; Dkt. No. 14, Ex. C at 21–23 [hereinafter Fox Dep.]. Long before his employment with the County, Hester was diagnosed with diabetes in 1980. Hester Dep. 23. The County knew about Hester's diabetes prior to hiring him as a mechanic in 2004. *Id.* at 24.

As a mechanic for the County, Hester performed repairs and maintenance work on County vehicles as well as inspected and road-tested each vehicle assigned for repair. Hester Dep., Ex. 5.

In addition to regular attendance, Hester's job description also included a variety of physical and environmental demands, including the ability to stoop, bend, push, pull, walk, stand, and lift up to 100 pounds and to work outdoors in extreme weather conditions, heat, cold, and rain. *Id.* During his employment, Hester received copies of the Williamson County Fleet Services Department Policy and an employee handbook, which was updated periodically. Hester Dep. 46–47, Ex. 2. The handbook contained a copy of the Williamson County Family and Medical Leave Act Policy, discussing leave requirements, use of paid and unpaid leave, intermittent leave, and reinstatement policies under the Family and Medical Leave Act ("FMLA"). *Id.*, Ex. 1; Dkt. No. 14, Ex. B at 63–64 [hereinafter Zirkle Dep.].

On the whole, Hester received positive reviews over the course of his employment with the County. Hester Dep. 65–66. However, in February 2011, Hester twice became incoherent and weak at work. Following these incidents, the County sent him a notice on March 1, 2011, informing him that he was eligible for leave under the FMLA and describing that his sick and vacation leave would be used at the same time. *Id.* at 83–84, Ex. 4. In April 2011, Hester underwent a diabetes-related toe amputation following a bone infection in his left great toe. *Id.* at 102–04. Hester's physician requested that Hester be off work for four weeks following the surgery. *Id.* at 104, 106. Hester returned to work shortly after May 20, 2011. *Id.* Several weeks later on July 14, 2011, Hester experienced chest pains and erratic blood sugar levels while working on an alignment machine. *Id.* at 115–16. When Hester's insulin medication did not resolve the issue, he was transported to the hospital, where he stayed for four days. *Id.* Hester's physician then directed him to stay home from work until August 26, 2011, and referred him to a specialist to help him better control his diabetes. *Id.*, Ex. 11. On August 10, 2011, Hester's podiatrist notified the County that Hester required surgery

on his second toe and that he would need to be off of work for approximately eight additional weeks. *Id.*, Ex. 12. Hester exhausted his FMLA leave benefits on August 19, 2011. Fox Dep. 21.

After receiving the podiatrist's certification, the County decided to terminate his employment with the County and encouraged him to reapply when he was able to work. Zirkle Dep. 52–56; Fox Dep. 23–24. Thereafter, Hester filed the instant suit, alleging that the County violated the Americans with Disabilities Act ("ADA") by intentionally discriminating against him due to his diabetes and by failing to make reasonable accommodations to him. Dkt. No. 1 at 4. Hester also brings claims under the Age Discrimination in Employment Act ("ADEA") and Chapter 21 of the Texas Labor Code. *Id.* at 5–6. The County denies Hester's allegations, arguing that Hester was terminated because he had exhausted all available leave and was unable to return to work. Dkt. No. 14.

The County now moves for summary judgment on all of Hester's claims, contending that he cannot establish a *prima facie* case of disability discrimination because he is not a qualified individual with a disability. The County further argues that there is no evidence supporting an age discrimination claim. As such, the County asserts that it is entitled to summary judgment as a matter of law on all of Hester's claims. *Id.*

## II. STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III. ANALYSIS

**A.   Hester's Disability Discrimination Claims**

In his Complaint, Hester alleges that the County discriminated against him based on his disability by (1) intentionally terminating his employment as a result of his diabetic condition; (2) failing to provide him with equal terms and conditions of employment, workplace and promotional opportunities, and other advantages and privileges of employment; (3) failing to provide

him with reasonable accommodations; and (4) failing to engage in an interactive process relating to his disability and reasonable accommodation.[1]

In its Motion for Summary Judgment, the County contends that Hester's disability discrimination claim fails as a matter of law because (1) Hester cannot establish a *prima facie* case of disability discrimination and (2) the County has proffered a legitimate, non-discriminatory reason for its actions. Dkt. No. 14. The County submits that Hester has presented no evidence to support a *prima facie* case of disparate treatment. *Id.* at 10. It further argues that Hester was terminated because he had exhausted all of his leave, both paid and unpaid, under FMLA and that he was unable to return to work. *Id.* at 14. As such, the County contends that Hester was not a "qualified" individual under the ADA. *Id.* at 11–12. The County further asserts that it must prevail on Hester's claims that the County failed to provide him with reasonable accommodations and did not engage in an interactive process with Hester prior to his termination. Dkt. No. 14. In response, Hester argues that there are disputed facts regarding whether he was able to perform his job at the time of

---

[1] Because the language of Chapter 21 of the Texas Labor Code closely mirrors the language of the ADA and ADEA, the Court addresses Hester's claims under these statutes collectively in this Report and Recommendation. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex.App.—San Antonio 2001, no pet.) ("Because our state statute tracks its federal counterpart . . . we may consider analogous federal case law in the interpretation and application of our Texas statute."); *see also* TEX. LAB. CODE ANN. § 21.001(3) (West 2006) ("The general purposes of this chapter are to provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments."); *Westrich-James v. Dallas Morning News., Inc.*, No. 07–1329, 2012 WL 4068982 at *3 (N.D. Tex. Sept. 17, 2012) ("[T]he legal standards . . . for claims under the ADA are equally applicable to . . . claims under the Texas Labor Code."); *Simmons v. Navy Fed. Credit Union*, No. 10–14, 2011 WL 2078528 at *1 n.2 (S.D. Tex. May 26, 2011) (noting that the standards under the Texas Labor Code are virtually identical to the ADEA); *Hovanas, et al. v. Am. Eagle Airlines, Inc.*, No. 09–0209, 2009 WL 4639492 at *4 (N.D. Tex. Dec. 8, 2009) ("The requirements for establishing a prima facie discrimination or retaliation claim under the [Texas Commission on Human Rights Act] mirror those of their ADEA counterparts.").

his discharge. Dkt. No. 17 at 3. He asserts that his application for Social Security disability benefits do not preclude him from pursuing his claims in the instant case. *Id.* at 11–13. Additionally, Hester contends that the County failed to engage in discussions with him concerning his FMLA leave time benefits and possible termination. *Id.* at 4–5. Finally, Hester submits that there are genuine issues of material fact regarding whether the County provided reasonable accommodations and engaged in an interactive process with him prior to his termination. *Id.* at 7–8.

Hester argues throughout his deposition and in his response that the County failed to fully inform him about his FMLA benefits. *See, e.g.*, Hester Dep. 45–46, 101, 105; Dkt. No. 17 at 4. To the extent Hester contends that the County's alleged failure to inform him about his FMLA benefits violates the ADA, his claim is without merit. The ADA prohibits discrimination against those individuals who are able to establish that they are disabled as defined in the ADA. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). It makes no mention of the obligations of an employer to inform its employee of his leave benefits. Moreover, the summary judgment evidence clearly shows that the County provided Hester with information regarding his leave benefits. For example, the County gave Hester several employee handbooks over the course of his employment, which included the County's FMLA leave policy. Hester Dep. 46–47, Exs. 1–2. The County also sent Hester notices in 2006 and 2011, explaining his FMLA leave benefits. *Id.*, Exs. 3–4. Hester's own failure to read the documents from the County does not create a cause of action under the ADA. *See id.* at 48.

1.   **Affidavit Evidence**

As an initial matter, the Court addresses Hester's reliance upon his affidavit taken April 30, 2013. Dkt. No. 17, Ex. A [hereinafter Hester Affidavit]. In his response, Hester appears to rely on

his affidavit as evidence that there is a genuine factual dispute regarding whether Hester could return to work in August, 2011. Dkt. No. 17 at 3–4. The representations in Hester's affidavit, however, directly contradict his own deposition testimony, where he claims that he could not work in August, 2011. *See, e.g.*, Hester Dep. 119, 154–55. For example, when Hester was asked whether he worked at the County between July 14, 2011, and September 1, 2011, he replied that "[he] couldn't." *Id.* at 119. Furthermore, when Hester was asked to explain whether he could perform the job of a mechanic after being released from the hospital, he said "I couldn't do it at all" and "I still can't." *Id.* at 154–55. Clearly, these statements controvert Hester's affidavit, in which he proclaims that he was able to work in August 2011. Hester Affidavit 3–4.

"It is well settled that . . . a party [cannot] defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[T]he nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."). "Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists." *Albertson*, 749 F.2d at 228. In this case, there is no explanation by Hester concerning why his affidavit, taken April 30, 2013, directly contradicts his deposition testimony of March 26, 2013. Hester does not contend that he misspoke during the deposition or that there was a misunderstanding of a particular question. Instead, he merely submits to the Court that his own conflicting testimony serves to create a factual dispute regarding whether or not he could return to work in August, 2011. Additionally, the record does not contain any documentation suggesting that Hester *could* work in August, 2011. For example, a

medical certification filled out by Dr. Tony Gauntt on July 22, 2011, estimates that Hester would be unable to work from July 25, 2011, until August 26, 2011. Dkt. No. 17, Ex. K. Another medical certification completed by Dr. Jonathan Smedley on August 10, 2011, clearly states that Hester would not be able to perform his job functions for eight weeks as he would be unable to wear his work boots. Dkt. No. 17, Ex. L. Lacking any explanation for the discrepancy in testimony and with no support in the record for Hester's current claim, the Court concludes that Hester may not create a factual dispute by using his own affidavit to contradict his previous sworn testimony.

### 2. Disparate Treatment

The County contends that it is entitled to summary judgment on Hester's claims that the County violated the ADA by terminating and discriminating against him based on his diabetes. Dkt. No. 14 at 9–15. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8).

Where, as here, the plaintiff only relies on circumstantial evidence,[2] the Court must begin with the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009) (citing *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000)).

> Under this framework, a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) [h]e is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. Once the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination.

*McInnis*, 207 F.3d at 279–80 (internal citations omitted). Applying this legal framework to the instant case, the Court finds Hester's contentions that the County terminated him based on his diabetes and discriminated against him by failing to provide him with equal terms and conditions of employment to be without merit. In particular, Hester has failed to establish that he was a "qualified individual" under the ADA at the time of his termination. To avoid summary judgment, Hester needed to demonstrate that "(1) he could perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him

---

[2] To the extent Hester claims that there is direct evidence of the County's discrimination based on his diabetes, the Court rejects his contention. Dkt. No. 17 at 3. In particular, Hester asserts that Michael Fox ("Fox"), his former supervisor at the County, told him that he was being discharged because of his diabetic condition. *Id.* Yet nothing in the record credibly demonstrates that Fox specifically referenced Hester's diabetic condition during his termination conversation other than Hester's own affidavit, which was produced and submitted following the County's Motion for Summary Judgment. *See* Dkt. No. 17, Ex. A at 2. Indeed, during Hester's own sworn deposition, he specifically stated that Fox did not specify what "condition" was being referenced. Hester Dep. 142. As such, the Court declines to construe Fox's statements as direct evidence of the County's discrimination against Hester based on his diabetic condition.

to perform the essential functions of the job." *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999). He has not done so.

At his deposition, Hester clearly stated multiple times that he could not return to work as a mechanic on the date of his termination. Hester Dep. 119, 120–21, 154–55. In fact, Hester even expressed that he still could not perform the job of a mechanic as of March 26, 2013, the date of his deposition. *Id.* at 155, 176. By his own sworn testimony, Hester represented that he could only work for about five minutes before he would need to sit down for thirty minutes. *Id.* at 176. As noted previously, the medical record further supports Hester's deposition statements. Medical certifications completed by Dr. Tony Gauntt on July 22, 2011, and Dr. Jonathan Smedley on August 10, 2011, clearly indicate that Hester would not be able to return to work for at least several weeks after September 1, 2011. Hester Dep., Exs. 11–12; Dkt. No. 17, Exs. K, L. Furthermore, Hester completed an application for long-term disability insurance two weeks following his termination in which he represented that he could not return to his job as a mechanic. Hester Dep., Ex. 17. Simply put, there is no factual dispute regarding whether Hester was able to work on the date of his termination.[3]

Accordingly, the Court finds that Hester has not shown that he could perform the essential functions of a mechanic in spite of his disability nor has he demonstrated that a reasonable accommodation would have allowed him to perform the essential functions of a mechanic. Therefore, Hester was not a "qualified individual" with a disability under the ADA because he could not perform the essential functions of his mechanic job at the time of his termination. As such,

---

[3] The only evidence suggesting that Hester could work on the date of his termination comes from his own affidavit, which the Court has already determined cannot be used to create a factual dispute in this case. *See supra* Part III.A.

Hester's claims that the County discriminated against him based on his diabetes by terminating him and not providing him with equal terms of employment must fail because he has not established a *prima facie* case of disparate treatment under the ADA. Hester has failed to meet his initial burden under the *McDonnell Douglas Corp.* framework.

Even if Hester were able to establish a *prima facie* case of disability discrimination, his claims would similarly fail because he has not demonstrated that the County's reason for terminating his employment was a pretext for unlawful discrimination. The County asserts that Hester was terminated because he had exhausted his available leave and still could not return to work. Dkt. No. 14 at 14. Hester provides no evidence to suggest that the County's proffered reasoning is merely a pretext for discriminating against him based on his disability. Rather, the County simply enforced its policy that when an employee has exhausted all of his leave time and still could not return to work, the employee was discharged. *See, e.g.*, Fox Dep. 23. In fact, since January 1, 2006, the County has terminated ten other employees for exhaustion of leave time. Hester Dep., Ex. D. Hester does claim that during his termination conversation, he was told that the County could not continue his employment due to his "condition." Dkt. No. 17 at 3. Yet Hester admitted in his deposition that it was unclear precisely what "condition" was being referenced. Hester Dep. 142. (Hester's former supervisor, Michael Fox, denied that there was any discussion of Hester's diabetic condition during his termination conversation. Fox Dep. 23.) Indeed, a reference to Hester's "condition" is ambiguous, as it may simply have been another way of stating that Hester was being terminated because, as a result of his ailments, he was unable to return to work after exhausting all of his leave time. One ambiguous statement is not enough to show that the County's articulated reason for

terminating Hester was actually a pretext for unlawful discrimination. Thus, Hester's disparate treatment claims under the ADA would fail even if he had established a *prima facie* case.

### 3. Reasonable Accommodation and Interactive Process

The County argues that it is also entitled to summary judgment on Hester's claims that the County failed to (1) provide him reasonable accommodation for his disability and (2) engage in an interactive process with him to find a solution prior to discharging him. Dkt. No. 14 at 15–18. Under the ADA, "reasonable accommodation" includes

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). It is the employee's responsibility to inform his employer that an accommodation is needed. *Chevron Phillips Chem. Co., L.P.*, 570 F.3d at 621. "The plaintiff is required to demonstrate, as part of his *prima facie* case, that an accommodation of his disability exists and that such accommodation is reasonable." *Bennett v. Calabrian Chem. Corp.*, 324 F.Supp.2d 815, 836 (E.D. Tex. 2004) (citing *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). "[A] reasonable accommodation is a method of accommodation that is reasonable in the run of cases," *Riel*, 99 F.3d at 683 (internal quotations and citations omitted), and "is by its terms most logically construed as that which presently, *or in the immediate future*, enables the employee to perform the essential functions of the job in question." *Rogers*, 87 F.3d at 759–60 (internal citation omitted) (emphasis added). Once the plaintiff does so, the defendant must show that the proposed reasonable accommodation would result in undue hardship. *Id.* at 681–82; *see also* 42 U.S.C. § 12112(b)(5)(A).

First, it is not even clear in the record before the Court that Hester made what would be considered under the ADA to be a request for an accommodation. What the record reflects is that one of Hester's doctors had indicated that he would need to be off work until August 26, 2011, but before that time came, a different doctor—Hester's podiatrist—notified the County that Hester needed additional foot surgery, which was scheduled for August 17, 2011, and Hester would be unable to work for eight weeks following the surgery. Hester Dep., Ex. 11–12. The record further shows that Hester's leave time would expire days after the newly scheduled surgery.[4] Fox Dep. 21. Hester contends that the medical certification from Dr. Smedley should be treated as a request by Hester that the County accommodate his disability by allowing him at least eight additional weeks of leave beyond that which the FMLA required or the County's policies provided. Dkt. No. 17 at 7. Yet, the Court cannot find in the record any evidence of Hester himself raising this issue with any of the County representatives, or of him making it clear that the doctor's medical certification was a request by Hester that the County allow him additional unpaid leave, as an accommodation of his disability. Obviously, Dr. Smedley would have not known the status of Hester's leave with the County, and he was simply providing the County information regarding Hester's medical needs insofar as they impacted Hester's ability to work at the mechanic position. And it is not obvious that the County should have understood the note as a request for an accommodation, given that it arrived via fax from one of Hester's doctors, at a time when Hester was out on FMLA and sick leave. With this record, the Court cannot conclude that Hester fulfilled the first element of an ADA claim.

---

[4] Hester's FMLA leave benefits were exhausted on August 19, 2011. Fox Dep. 21. Dr. Smedley's medical certification, sent August 10, 2011, indicated that Hester was scheduled to have toe surgery on August 17, 2011, and that he would need an additional eight weeks to recuperate. Zirkle Dep. 42; Hester Dep., Ex. 12.

Even if the doctor's faxed note is viewed as an accommodation request, the ADA claim still fails, as Hester cannot demonstrate that this request was "reasonable" under the ADA. By itself, Dr. Smedley's note only stated that Hester would need eight weeks to recover from the foot surgery. Dr. Smedley is Hester's podiatrist, and he was not treating Hester's underlying diabetes, and thus his note cannot be taken as a categorical statement that Hester would be capable of returning to work at the expiration of the eight weeks. Furthermore, as has been noted several times, the claim that Hester only needed eight more weeks of leave to return to work is inconsistent with the undisputed evidence. Neither Hester nor his physicians represented that Hester could work at the time of his termination, and Hester testified at his deposition in March, 2013, that he still was not able to work as a mechanic. Hester Dep. 155, 176. The County was only required to provide accommodation that would allow Hester to perform the essential functions of a mechanic "presently, or in the immediate future." *Rogers*, 87 F.3d at 760. A request for an indefinite amount of leave is not "reasonable" under the ADA. *Amsel v. Tex. Water Dev. Bd.*, 464 Fed.Appx. 395, 400 (5th Cir. 2012). "Reasonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected." *Rogers*, 87 F.3d at 760 (internal citation omitted).

Finally, if Hester is assumed to have made a specific request for eight weeks of leave—as he contends in his briefing—the ADA claim still fails because Hester cannot show that the County's failure to grant him an additional eight weeks of leave caused him harm. As just discussed, Hester's sworn testimony is that he remained unable to perform the essential functions of the mechanic position approximately nineteen months after his termination. Hester Dep. 155, 176. In his deposition, Hester notes that he can only work for about five minutes before he would need to sit down for thirty minutes. *Id.* at 176. Thus, even if the County had granted his request, it would not

have resolved Hester's ability to perform his essential functions as a mechanic. As such, Hester cannot establish that the County's failure to grant Hester's requested accommodation caused him any harm as Hester would have been unable to return to work at the expiration of the eight week period.

Similarly, Hester's claim that the County failed to engage in an interactive process must also fail. "When a qualified individual with a disability requests a *reasonable* accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (emphasis added). Here, the Court has already determined that Hester did not request a *reasonable* accommodation. As such, the County had no obligation to engage in an interactive process with Hester.

### B.     Hester's Age Discrimination Claims

Hester further asserts claims under the ADEA, contending that the County discriminated against him because of his age by (1) terminating his employment and (2) failing to provide him with equal terms and conditions of employment, workplace and promotional opportunities, and other advantages and privileges of employment. Dkt. No. 1 at 5. The County argues that Hester's age discrimination claim fails as a matter of law because he cannot establish a *prima facie* case and because the County has presented legitimate, non-discriminatory reasons for its termination of Hester. Dkt. No. 14 at 18. In his response, Hester does not specifically address the County's arguments for summary judgment concerning his age discrimination claim.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In the Fifth Circuit, ADEA cases are distinguished based on whether the

plaintiff relies upon direct or purely circumstantial evidence to establish a case of age discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). As with ADA cases, when a plaintiff only relies on circumstantial evidence, the Court must analyze the claim under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Pursuant to that framework, Hester first must make a *prima facie* case of discrimination based on age. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). To establish a prima facie case for ADEA purposes, Hester must show that he: (1) was discharged; (2) was *qualified for the position*; (3) was within the protected class at the time of discharge; and (4) "was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of [his] age." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (internal citations omitted) (emphasis added).

Like cases brought under the ADA, if Hester makes a *prima facie* case, the burden then shifts to the County to articulate a legitimate, non-discriminatory reason for the employment decision. *Moss*, 610 F.3d at 922. If the County meets its burden, "the presumption of discrimination created by the *prima facie* case disappears, and [Hester] is left with the ultimate burden of proving discrimination." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Hester may meet his burden by presenting evidence "tending to show that the reason offered by [the County] is a pretext for discrimination." *Id.* Hester "may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss*, 610 F.3d at 922 (internal quotation marks and citation omitted). However, unlike Title VII cases, it is insufficient under the ADEA to show that discrimination was a motivating factor; Hester

must show that age was the "but-for" cause of the challenged adverse employment action. *Id.* at 928 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173–78 (2009)).

After reviewing the record, the Court concludes that Hester's age discrimination claim must fail. In this case, the Court concludes that Hester has not established a *prima facie* case of age discrimination because, as noted previously, he was not a "qualified individual" as he was unable to return to work at the time of his termination. *See supra* Part III.A.2. The Court also finds that Hester has failed to meet his burden as to the fourth element of a *prima facie* case for ADEA purposes. In particular, the record contains no evidence for the Court to conclude that Hester was discharged as a result of his age. Furthermore, although Fox stated that Ricardo Martinez was hired by the County following Hester's termination (Fox Dep. 24), there is no evidence regarding Martinez's age. Thus, Hester has not shown that he was replaced by someone outside the protected class or by someone younger. Because Hester has failed to establish a *prima facie* case, the County is entitled to summary judgment on his age discrimination claims.

Even assuming that Hester established a *prima facie* case under the ADEA, he does not present any evidence suggesting that the County's reason for terminating his employment was pretextual. While Hester alleges that his coworkers did make comments about him being the "old man," he admits that such comments were made in jest. Hester Dep. 183. As the Fifth Circuit has explained,

> comments are evidence of discrimination only if they are 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that do not meet these criteria are considered stray remarks, and standing alone, are insufficient to defeat summary judgment.

*Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (internal quotations and citations omitted). Here, there is simply no evidence to suggest that the County discriminated against Hester based on his age. Hester does not state when the comments by his coworkers were made nor does he allege that an individual with authority over his employment made such comments. In fact, Hester specifically noted that neither Fox, Hester's former supervisor, or Rex Schneider, the shop foreman, made comments about his age. Hester Dep. 183. In short, even assuming Hester has established a *prima facie* case of age discrimination, he has failed to present evidence to suggest that the County's reason for terminating his employment was merely a pretext for unlawful discrimination. As such, the County is entitled to summary judgment on Hester's age discrimination claims.

## IV.  RECOMMENDATION

In accordance with the preceding analysis, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Williamson County's Motion for Summary Judgment (Dkt. No. 14).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of August, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE